IN THE MATTER OF JOSEPH E. SHAMY,
AN ATTORNEY AT LAW.

Argued March 8, 1977—Decided May 13, 1977.

*Mr. David E. Johnson, Jr.* argued the cause for complainant.

*Mr. Robert W. Gluck* argued the cause for respondents (*Messrs. Gluck and Kelso,* attorneys).

PER CURIAM. The Central Ethics Unit of the Administrative Office of the Courts filed a petition charging the respondent Joseph E. Shamy, an attorney at law of this State, with unprofessional conduct. We issued an order to show cause together with a copy of the petition. Hearings were held before the Middlesex County Ethics Committee which submitted a report. We issued an order to show cause directed to the respondent to answer why he should not be disbarred or otherwise disciplined.

We have examined the record including the exhibits and find the following virtually undisputed facts. On May 26, 1970, the respondent purchased from an elderly widow, Maria DiCara, two houses, one located at 66 Lee Avenue, New Brunswick, and the other at 68 Lee Avenue, New Brunswick. The aggregate price was $24,200. Mrs. DiCara accepted in part payment purchase money mortgages of $8,000 on the 66 Lee Avenue property and $12,000 on 68 Lee Avenue. Both mortgages were due on June 30, 1980, and provided for equal monthly payments on the first day of each month. Each mortgage granted the mortgagor the right to substitute other collateral of equal or greater value, subject to the mortgagee's approval as to location and type of realty. The indebtednesses were evidenced by two mortgage notes with identical provisions. In addition to the substituted collateral provision set forth in the mortgages, the notes granted the respondent the right to pay up to 20% of the balance due in any one year.

After respondent had purchased the properties, he telephoned Mrs. DiCara's attorney and objected to the note provision limiting his prepayment privilege to 20% of the balance due in one year. Mrs. DiCara's attorney replied

that the provision would not be modified and that the mortgages and notes permitted respondent the privilege of substituting security of equal or greater value.

The respondent repaired the premises and promptly sold them. Clayton and Sandra Stewart, who were represented by the respondent, purchased 66 Lee Avenue and acquired title from the respondent on September 15, 1970. They financed the purchase with a purchase money mortgage in the principal amount of $28,950 obtained from the Larson Mortgage Company.

In connection with the closing the respondent executed and delivered to the Stewarts an affidavit of title in which he averred that the premises were free and clear of all mortgage liens. He also sent a letter dated September 15, 1970, the closing date, to the Larson Mortgage Company in which he certified that its mortgage was a subsisting first lien on the premises. Further, he signed and sent on October 13, 1970 a final certificate to the Inter-County Title Guaranty and Mortgage Company to obtain a title policy. In that document he certified that the Larson Mortgage Company indenture was a valid first lien. The title company issued title policies to the Stewarts, Larson Mortgage Company and the Secretary of Housing and Urban Development (this was a federally insured mortgage) in which it asserted that the Larson mortgage was a first lien.

On November 4, 1970, the 68 Lee Avenue property was conveyed by the respondent to Robert T. and Jennie Brunson for $22,700. Here again respondent represented the buyers and himself as seller. The purchase price was financed in part by a purchase money mortgage from the Larson Mortgage Company in the principal amount of $18,250. At the closing respondent executed and delivered an affidavit of title reciting that the premises were free and clear of all mortgage liens. On that day he sent to the Larson Mortgage Company a certificate that its mortgage was a valid first lien. Respondent had his clients, the purchasers, execute an affidavit

of title which did not reflect the existence of the DiCara mortgage. Respondent submitted the title binder and final certificate to the Inter-County Title Guaranty and Mortgage Company, neither of which reflected the outstanding mortgage lien, in order to obtain title policies for the Brunsons and the Larson Mortgage Company.

The respondent did not satisfy the two DiCara mortgages until the latter part of October 1971, more than 13 months after the Stewart closing and more than 11 months after the Brunson closing. The mortgages were cancelled of record on November 10, 1971.

In August and September 1970, respondent had written to Mrs. DiCara that he wanted to substitute other properties and, if this was not satisfactory, respondent had no alternative but to pay the mortgages off in full. On September 15, 1970, the day on which title to the 66 Lee Avenue property was transferred, he wrote to Mrs. DiCara's attorney that he wished to substitute other properties as security and that "I intend to sell 66 Lee Avenue very shortly and would appreciate hearing from you concerning this matter." On December 3, 1970, the respondent wrote Mrs. DiCara and requested that her son investigate two properties as possible substitutes. In April 1971, respondent wrote again to Mrs. DiCara and her attorney. In June 1971, respondent recorded a deed to himself of property in Milltown, New Jersey and on August 16, 1971, he advised a Ms. Joan Williams, a realtor who had represented Mrs. DiCara, that he had executed a new bond and mortgage on the Milltown property to be substituted in lieu of the Lee Avenue properties, and that the original mortgages for 66 and 68 Lee Avenue were to be transmitted to him endorsed for cancellation. He also enclosed his check for the past due monthly payments on the two mortgages for June, July and August, to be held in escrow pending transmittal of the mortgages to be cancelled.

Since the mortgage payments were in arrears, when Joseph DiCara learned that the property had been sold, he engaged an attorney to collect the principal amounts. He acted on

behalf of his mother, who was in her 80's and not in good health. Upon demand, respondent paid that sum on October 28, 1971, and the mortgages endorsed for cancellation were surrendered to him.

The respondent's explanation, if it may be called that, is that each false document was "inadvertently" prepared and mailed. We do not accept that assertion. He knew there was a prepayment restriction. He knew that substitution of the mortgaged properties was subject to DiCara approval. He knew when he closed title to each house on September 15, 1970 and November 4, 1970, respectively, that the DiCara mortgages were outstanding valid first mortgage liens and that substitution had not been agreed upon. Yet, he executed false affidavits, false certificates, a false title application; permitted his clients to execute false affidavits of title; transmitted to the title company false title binders and false title applications. Furthermore, he did not even escrow the funds which the closing statements indicated were earmarked for the satisfaction of the DiCara mortgages; instead he converted them to his own use. His conduct constitutes an egregious violation of the Disciplinary Rules. *DR* 7–102(A)(3), *DR* 7–102(A)(5), *DR* 7–102(A)(7), *DR* 9–102(A) and *DR* 1–102(A)(1), (3), (4) and (6). We have previously condemned conduct strikingly similar to that of the respondent. *In re Weinblatt,* 48 *N. J.* 559 (1967).

The respondent is suspended from the practice of law for one year and until further order of the Court.

*For suspension for one year*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*Opposed*—None.

# ORDER

It is ORDERED that JOSEPH E. SHAMY of New Brunswick be suspended from the practice of law for one year

and until further order of the court, effective June 1, 1977 and it is further

ORDERED that JOSEPH E. SHAMY be and hereby is restrained and enjoined from practicing law during the period of his suspension.